right now. Do you concede that this award is consistent with the law of the arbitral forum? I apologize I misunderstood your question before. No, no if we could. I didn't think you did. No thank you for thank you for clarifying your honor. The the point that I would like to make is that the Swiss PILA and the Federal Arbitration Act both provide standards to vacate an award. Under either standards we would we would be able to vacate. This is not an argument that was in fail. That argument was and we had an expert who submitted an expert report on that. It's not an argument you made to us. Before this court we've asked for remand on that issue. Yes all right. Yeah I think we've got it. Thank you very much. Thanks below. Very helpful argument on both sides. Appreciate it. We will take it under advisement. Do you suppose we can send this to you? Yes. Well argued. Interesting. Very interesting. All right 23-7-2-8-0 U.S. v. Rodriguez. Thank you. Good morning and may it please the court. My name is Jamesa Drake and I'm here representing the appellant Joshua Rodriguez. According to the government, the defendant was part of a narcotics conspiracy, specifically a five-member gang that sold drugs outside the housing project at 1408 Webster Avenue. And again according to the government, defendant and his fellow gang members were there selling drugs nearly every single day. According to the testimony elicited by both the government and the district court, the decedent's decision to sell marijuana in the same building and to the same customers was perilous. In fact it sparked a quote turf war. The defendant wanted to argue in summation that this turf war was broader than just a disagreement between him and the decedent. He wanted to argue in summation that plenty of other drug dealers had a motive and opportunity to kill the decedent and that's our second assignment of error. In order to personalize the dispute and to strengthen the impression that it was exclusive to defendant and the decedent, the government introduced testimony from the decedent's girlfriend. The girlfriend summarized conversations that supposedly took place in the hallway between the decedent and the defendant where the defendant supposedly warned the decedent not to sell drugs in the building. That's our first assignment of error. Neither error was harmless. The dispute between the defendant and the decedent and the curtailment in summation precluded the defendant from arguing that others had a motive and opportunity to kill. Can I go back to the first one? I understand the significance of the of the testimony sort of in the abstract, but in the context of the undisputedly admissible testimony, I'm trying to figure out the marginal value of that. So I don't think there's a dispute that the girlfriend's testimony about the incident when things came to a physical altercation and she physically came out and the defendant said to her, I don't want him selling his drugs in this building, whatever the statement was, there's no dispute that that was properly admitted. And so one of the things I'm struggling with is once you have that, what's the marginal impact for the purposes of setting up the conflict that you're describing of these other bits of testimony? Right. So we agree his statement to her would be admissible as a statement by party opponent and her observations, she saw the tail end of this, these fisticuffs, that too would be admissible. But there was testimony from Martinez, the cooperating witness, that he witnessed an interaction between the defendant and the decedent after the fisticuffs and it appeared as though they had settled things. There didn't appear to be any acrimony between the two men. What the girlfriend's testimony about these hallway conversations adds is it, in addition, it strengthens the impression that there was this ongoing dispute. But am I getting the chronology wrong? I thought that the present sense impression moments that we're talking about preceded the fisticuffs in the hallway. So if the theory is they dispel the suggestion from Martinez that they were getting along again, that doesn't work chronologically. Your Honor is right about the timeline. The hallway conversations, according to the girlfriend, happened before the fisticuffs and the fisticuffs was sort of the fifth conversation and the end of it. And you're right, the cooperator then testifies. After all of that, the men seem to put their differences behind them. But of course, the cooperator's testimony, he was a cooperator, was suspect. And so what the girlfriend's testimony adds on the margin is it strengthens this notion that, in fact, despite what the cooperator said, there really was this protracted, very personal disagreement between these two men. And that was, of course, essential to their case. This was a whodunit. Because as a member of a drug conspiracy and as part of this broader turf war, there was a real question about whether there were other people who had similar motive and opportunity. What the girlfriend's testimony does, the utility it provides, is to really center that dispute as exclusively between these two men. And in segueing, rather, to our second assignment of error, that's why it was so incredibly harmful and prejudicial to the defense for the court to have limited in summation the defendant's ability to point to the very same evidence that the government had, the very same evidence about this turf war that it elicited in support of its convictions on counts one and two, the conspiracy, to say that evidence supports alternative inferences. So in terms of what it was you wanted to say in summation, were you arguing below? No, you're arguing below. So counsel in summation wanted to argue below and wasn't allowed to. The closing talked all about the turf war. So the notion of a turf war involving broader people was in the mix, talked about the fact that had these other people who were dealing as well, got to highlight testimony from Martinez about the dangers of selling in someone else's turf. So I guess the thing that counsel wanted to say but couldn't was it could have been one of those other four? Which was exactly and which was absolutely crucial here because the government points to all of that evidence and says, and you know it was the defendant, and the defendant wanted to be able to point to all of that same evidence and say, no way it could have been any of these other drug dealers who were operating in and around this venue. And his ability, his constitutional right to be able to try and persuade the jurors as to reasonable doubt that he was the shooter was absolutely essential. Correct me if I'm wrong, there was a witness wasn't there that said that they saw him go to the staircase right after the victim and his son were going up the elevator? Yes, your honor. Was it were any of the other potential shooters seen or identified in the vicinity of the victim within a time range that kind of might implicate that they were around and available to shoot him? I want to answer that very carefully and the government will correct me if I'm wrong, but there was quite a bit of surveillance video immediately before and after the shooting. I don't believe that there was any testimony to say these men that you see over in the corner of your screen, those were the members of the defendant's gang. Nothing like that. But I understand, that's sort of what I understand to be the crux of the district court's ruling is hey, sure you may have motive as to those four, but if you can give us something else, if one of those four exited the building shortly after or you know was or entered the building shortly before, that may well be fair game to identify them not in sort of some broad, it might have been someone else's sense, but in the sort of more specific way that counsel sought to argue, but you're not contending that any evidence of that nature was admitted? The evidence as to opportunity was the fact that defendant and his gang members were outside this building on a nearly daily basis and that the defendant was not the leader of that gang. But like you said there's surveillance video and so the question was, was anyone identified in the surveillance video that was among the cast of people that were potential shooters? No, your honor. No, your honor. But if I may, there was still nevertheless this other evidence of opportunity. Now again, and this is what distinguishes this case and makes it interesting as compared to other alternative perpetrator cases, is this wasn't about the introduction of evidence. This was about the defendant's ability to simply point to the evidence already introduced and argue in summation it didn't support the inferences that the government wanted to be drawn from it. The defendant was obviously under no constitutional obligation to present evidence of his own and should have been permitted to say, you heard evidence that the defendant and his gang were outside all the time. You heard evidence that there was a turf war between them. How do you know? It was my client and not anyone else and that is what was precluded and what was prejudicial to him. Thank you. Thank you. Attorney Heavey? May it please the court, my name is Courtney Heavey. I represent the government on this appeal and I represented the government at the district court. I'm going to jump in on the present sense impression and specifically pick up on your honor's questions with respect to prejudice, which is a determinative factor here. As your honor pointed out, there's no dispute that the most recent, that the incident closest in time to the murder, which actually involved a physical altercation, which involved the victim, excuse me, the defendant putting a knife to the victim and then the victim punching the defendant in the jaw, was fully admissible. And that included the fact that the victim in putting the knife to, the defendant in putting the knife to the victim conveyed, I don't want you selling marijuana. That was far more probative of the circumstances leading up to the murder than these three other incidents prior in time where the testimony was so very narrow and simply that reflecting, conveying that the defendant had said he didn't want the victim selling marijuana. Right, so I take your argument on the harmless error. I am interested in the error question as well and I was trying to find cases that felt analogous. When I think of present sense impression, I think of like it's cold today or yeah, that like he's wearing glasses or you know things that are a little bit more, first of all, present sense impression. What's your strongest case for the notion that relaying a conversation, even a conversation that was quite recent, even if not contemporaneous, but that was quite recent qualifies as a present sense impression? Your Honor, I think it's true that you don't see it as often. In Medeco, you did have a situation where the eyewitness to the bank robbery conveyed something to, we'll call them individual A, and individual A then repeated that to the testifying witness and so there was a situation where you had the testifying witness testifying to a chain of conversations and I would also state that to the extent there was concern that deciding an event would include a conversation would open up present sense impression too far. I think here you have the fact that present sense impression was actually doing very little work because what you had was the defendant's statements to the victim and that was, that would have been admissible as statements against the defendant. Well, I'm actually back to, I'm to the point that what you have here in assessing a conversation as a present sense impression is arguably two levels of hearsay and here there's not the concern that opening up present sense impression to describing a conversation would open up a hearsay rule too much because the defendant, what is being conveyed is the defendant's statement to the victim and then that's part one. Defendant's statement to the victim is a statement against the defendant. Right, that's admissible. Which would be admissible and then also all present sense impression is doing necessarily here is the victim's statement to Ms. Ramirez who testifies and she's just repeating what the defendant had said. Well, that's, I mean, once you have hearsay within hearsay the challenged piece is doing all the work of the whole chain because without it you don't get the chain in. Well, I guess I'm just saying that this is different than, you know, Ms. Ramirez, the victim told Ms. Ramirez what somebody else totally unrelated had told him because that would be, that first chain would not have a hearsay exception. Right here, here, yeah, here's only the one piece of the chain. Exactly. And on top of the prejudice analysis, not only is there the fact that this comes in through undisputed admissible evidence of a more recent event, but you have all the other evidence of defendant's guilt here. You have the surveillance video showing the defendant going into, stalking the victim into the building shortly before the murder. You've got the video showing him leaving the building shortly after the murder. You've got testimony from Mr. Maynard who heard shots in the stairwell, goes to investigate and sees the defendant running up the stairwell with a gun saying, I just shot someone, I just shot someone. You have, to the extent there was any concern about the reliability of this beef you had, which Ms. Ramirez was talking about, you've got that in other forms. You had testimony from Mr. Martinez that there was this dispute. You had testimony from Mr. Maynard that the defendant had told him he had gotten into an argument with the victim. And so you had evidence of flight. This defendant leaves the neighborhood, he quits his job, and then he stops even using his benefits card. And so I think, yeah, I take all that. I want to just, before we lose your time, ask you a little bit about the summation. Why a defendant who's got a plausible theory that there's other people with motive and at least some whiff of evidence of access, because this is in the environments where they hang out, why isn't that permissible argument to say, could have been any one of them, and then the government can stand up and say, well, none of the other ones have all the things you just told us? And why isn't that really a question of the strength of the evidence to support the argument rather than the permissibility of the argument in the first place? Well, Your Honor, because the case law from this circuit is very clear that to start advancing these more speculative alternative perpetrator arguments, you really have to be able to establish several requirements. And here, while, and there are certain case law, for example, Wade, number one, is very much directly on point. You had a situation of the victim being a member of a gang and getting into, and that case was far stronger, to be clear. The defendant had identified an actual other alternative perpetrator that this victim had gotten into a shootout with three or four weeks before the murder and clearly was establishing a motive there with a very individual. And the court says there was no evidence of opportunity. One of the things I'm trying to figure out is when an alternative perpetrator theory, which the cases tend to be like, I think this person did it, right, this other identified individual, certainly doesn't extend. If you have the concept of broad gang warfare and something happens, and I'm not going to think you're saying it could have been any member of a large, large gang, is any time you're suggesting that there could have been an unidentified, nonspecified other thing that happened, is that an alternative perpetrator theory or is our alternative perpetrator case law more about identifying specified others? Your Honor, I think any time a defendant gets up and says, I didn't do it, my client didn't do it, and the evidence is insufficient, implicit within that is someone else did it. Now, I think where alternative perpetrator gets in is when you want to start pointing the finger at someone else. And here, they wanted to point the finger at a specific group of individuals that the defendant was also selling marijuana with. That, once you start saying it could have been ABCD, you have triggered the alternative perpetrator. So what if you have somebody who's had a long career in organized crime, and can you make the argument that this guy had lots of enemies? It could have been a lot of people. Is that an alternative perpetrator argument? Well, Your Honor, that is what they argued here. They got in the evidence that... They got in the evidence, but, and I haven't totally figured out whether the argument could have gone, based on the ruling by the court right before the argument, whether the argument could have gone a little farther or not, but they didn't connect that final dot. Turf wars, my guy didn't do it. They didn't get to say, and I don't think felt that they could say, turf war could have been related to a turf war. Lots of people involved in that turf war. Let's say there weren't four people in that building that they were trying to implicate, but it was a context of a broader ongoing warfare between two gangs over some turf. In that case, would it be permissible to say, look, there are a lot of people going after a lot of people here. You're not naming individuals. You're not even naming a small universe of four. You're describing a gang more broadly. Is that permissible? I think, Your Honor, there may have been able... You might be able to argue, this wasn't the only person that had this motive, but I don't think that you can start pointing the finger to one of these four people committed the crime. I see my time is up, Your Honor, so unless there are any further questions, the government would rest on its Thank you so much. Attorney Drake. But of course, that's all the defendant wanted to be able to do and wasn't allowed to do, is to say, there are plenty of other drug dealers in this environment who are unhappy about the fact that the decedent has moved into this territory, and any one of them could have done it, and that's how you know the state hasn't proven beyond a reasonable doubt that it was Mr. Rodriguez. Now, with regard to the alternative perpetrator case law, what that is largely talking about is a district court's authority to gatekeep the evidence. That's what Wade 1 and 2 is about. Is the defendant permitted to introduce evidence? That's not what this was about. This was about pairing and the line of cases that talk about a defendant's constitutional right to provide a complete defense, and central to that is the ability to make a summation where he gets to strenuously argue his theory. There are very, very limited cases. The government cites none. Is this theory that the evidence is too thin, or is this theory that there are other people available? What the defense... So you say he wasn't making the alternative perpetrator argument. Is that what you're saying? He was making an argument that it could have been any one of these other drug dealers, but what he told the court was... Did he... Was it because he wanted to say it could have been anybody else because the evidence is so poor here, you have no way of knowing who really did shoot this guy, or did he just want to say it could have been anybody else because everybody else wanted to shoot this guy? He's... I wish... Because one sounds like an alternative perpetrator, the other one sounds like a comment on the evidence. I think a fair reading of the record is that he wanted to do both. This whole thing gets started off by the defense attorney saying, I want to be able to argue to the jury in closing arguments. I didn't take your argument in your brief to be about the quality of the evidence. I thought I took it to be about the alternative perpetrator. Well, it's because... The argument is because there were so many other potential enemies, the government has failed to prove beyond a reasonable doubt that it was the defendant. Thank you. Appreciate your arguments. Thank you both. We'll take it under advisement.